IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

REC'D OCT 11

| | |
|---|---|
| CRYSTAL R. CANTY, Plaintiff | |
| v. | CIVIL ACTION NO. 23-cv-1873/JMY |
| CITY OF PHILADEPHIA; PHILADELPHIA POLICE DEPARTMENT; PHILADELPHIA DEPARTMENT OF HUMAN SERVICES; JONATHAN HOULAN; KIMBERLY ALI; LANERTIA FOSTER; MACKENZIE BARNES; THE SCHOOL DISTRICT OF PHILADELPHIA; ALBERT EINSTEIN MEDICAL CENTER; EINSTEIN EMERGENCY ROOM PHYSICIAN JANE DOE; JANET THOMPSON; MANN MASTERY ELEMENTARY SCHOOL; CATHOLIC COMMUNITY SERVICES; JESSICA BANH; PRESIDENT OF BOARD OF EDUCATION; PRESIDENT OF BOARD OF TRUSTEES; MAYOR OF CITY OF PHILADELPHIA; AND CITY COUNCIL OF PHILADELPHIA, Defendants | |

## AMENDED COMPLAINT

Plaintiff Crystal R. Canty, **pro se**, alleges:

1. This is an amended complaint pursuant to this Honorable Court's order of ~~August 1,~~ September 10, 2023 (granting Plaintiff leave to file Amended Complaint until ~~September 4~~ October 10, 2023), adding Defendants and facts relating back to the date, May 13, 2023, when this action was originally filed.

2. This action is brought under 42 U.S.C. §1983 and state law to redress the deprivation under the color of state and federal law of Plaintiff's rights as

secured by the United States Constitution and Laws of the United States.

3. This Court has jurisdiction of this action under 28 U.S.C. §§1331 and 1343(3) and (4), as this action seeks redress for the violation of Plaintiff's federal constitutional and civil rights and statutory rights, under the First, Fourth, Eighth, Thirteenth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983, 42 U.S.C. §12131(1)(B) and 12132, and 29 U.S.C. §794(a) and (d).

4. This Court also has supplemental jurisdiction under 28 U.S.C. §1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

5. Venue is proper under 28 U.S.C. §1391(b) and (c). On information and belief, all parties reside in the Eastern District of Pennsylvania, and a substantial part of the events giving rise to the claims asserted herein occurred within this district.

PARTIES

6. Plaintiff Crystal R. Canty (Ms. Canty) is a born citizen of the United States, who is located at 4131 N. Broad Street, Philadelphia, PA 19140.

7. Deleted.

8. Deleted.

9. Defendant City of Philadelphia is a political subdivision of the Commonwealth of Pennsylvania and a municipal corporation, which was at all relevant times the employer of the individual Philadelphia Police Officers and Supervisors personally involved herein, Defendant Jonathan Houlan, Defendant Kimberly Ali, Defendant Lanertia Foster, Defendant Mackenzie Barnes, Defendant Janet Thompson, Defendant President of the Board of Education, Defendant President of the Board of Trustees, and employer of individual Defendant City Council members. It is authorized to sue or be sued in its own name. Defendant City of RMXXXXXMiPhiladelphia

is and was at all times relevant to this complaint responsible for the policies, practice, customs, training, and supervision of Defendants Philadelphia Police Department, Philadelphia Department of Human Services, Jonathan Houlan, Kimberly Ali, Lanertia Foster, Mackenzie Barnes, The School District of Philadelphia, Janet Thompson, Mann Mastery Elementary School, Catholic Community Services, Jessica Banh, President of Board of Education, President of Board of Trustees, and City Council of Philadelphia.

10. Defendant City of Philadelphia is located at Office of the City Solicitor, City of Philadelphia Law Department, Civil Rights Unit, 1515 Arch Street, 14th Floor, Philadelphia, PA 19102.

11. Defendant Philadelphia Police Department is/was responsible for taken Ms. Canty's minor son, Princeton L. Canty Kent, into custody at the Philadelphia Police District 19 station house and then transporting Princeton to Defendant Philadelphia Department of Human Services.

12. Defendant Philadelphia Department of Human Services, is the local government agency, directed by Valerie A. Arkoosh, and responsible for the care and supervision of dependent and/or abused children in Philadelphia, Pennsylvania, thus, enforcement of the provisions of the Pennsylvania Juvenile Act, 42 Pa.C.S. §§6301-6365, 6368, the child Protective Services Law, 23 Pa.C.S. §6303(b)(1), and the Administrative Agency Law, 2 Pa.C.S. §504. Said Defendant is located at 1515 Arch Street, Philadelphia, PA 19102.

13. Defendant Jonathan Houlan, is employed as the Chief Deputy City Solicitor, for the City of Philadelphia Law Department, who is responsible for the filing the Dependency Petition against Ms. Canty on behalf of the City of Philadelphia Department of Human Services, in the Court of Common Pleas of Philadelphia County, Family Court Division, Juvenile Branch, in the Interest of: Lashawn Canty aka Lashawn Bradwell-Canty, at Docket No. :CP-51-DP-0002260-2017 and in the Interest of : Princeton Canty-Kent aka Princeton Canty, at Docket No. :CP-51-DP-0002261-2017, alleging that Ms. Canty's children was dependent and/or abused. Said Defendant is located at City of Philadelphia Law Department, 1515 Arch Street, 16th Floor, Philadelphia, PA 19102-1595.

14. Defendant Kimberly Ali is a Commissioner in charge of the Department of Human Services and responsible for the Deputy Commissioners in charge of Policy Development and System Enhancement, namely Gary O. Williams; Child Welfare Operations, namely, Samuel B. Harrison, III; Juvenile Justice Services, namely, Nelson L. Walker; and Deputy Commissioner in charge of Administration and Management, namely, Vongvilay Mounelasy, located at Philadelphia Department of Human Services, 1515 Arch Street, Philadelphia, PA 19102.

15. Defendant Lanertia Foster is/was a caseworker acting on behalf of Philadelphia Department of Human Services, located at, 1515 Arch Street, Philadelphia, PA 19102, at the time of the relevant acts complained of in this suit.

16. Defendant Mackenzie Barnes, at the time of the acts complained of by her in this suit, was employed as a case manager by Defendant Catholic Community Services, located at 1926 Grant Avenue, Philadelphia, PA 19115.

17. Defendant The School District of Philadelphia was responsible for the employment, training supervision of Defendant Janet Thompson and enforcement of the policies relating to Defendant Thompson's employment and mandatory duties, and is located at 400 N. Broad Street, Philadelphia, PA 19130.

18. Defendant Albert Einstein Medical Center was responsible for the medical treatment provided to Plaintiff Ms. Canty and acts complained of described herein relating to her seeking mental health treatment, and is located at 5501 Old York Road, Philadelphia, PA 19141.

19. Defendant Einstein Emergency Room Physician Jane Doe is employed by Defendant Albert Einstein Medical Center and was responsible for Plaintiff's (Ms. Canty's) psychiatric admission to the Einstein Crisis Response Center, and is located at Albert Einstein Medical Center, 5501 Old York Road, Philadelphia, PA 19141.

20. Defendant Janet Thompson was employed as Principal of Mann Mastery Elementary by Defendant President of Board of Trustees and responsible for the health and safety of the students and causing Plaintiff Ms. Canty's minor son, Princeston, to be placed in police custody, at the time of the acts complained

of by Defendant Thompson, and located at 5376 W. Berks, Philadelphia, PA 19131.

21. Defendant Mann Mastery Elementary School is a charter school and employed by Defendant Board of Trustees and is responsible for the operation of Defendant Thompson, i.e. enforcement of the policies, practice, regulations, and law relating to Defendant Thompson's employment, thus, the health and safety of students, at the time of the acts complained of by her described in this suit, and located at 5376 W. Berks, Philadelphia, PA 19131.

22. Defendant President of Board of Education is/was responsible for enforcement of the law, policies, practice, custom, training, supervision of Defendant Mann Mastery Elementary School and Health and Safety relating to its students at the time of the acts complained of against Defendants Thompson and Mann Mastery Elementary School, and is located at 400 N. Broad Street, Philadelphia, PA 19130.

23. Defendant President of Board of Trustees is responsible for the employment of Defendant Thompson and operation of Defendant Mann Mastery Elementary School, located at 400 N. Broad Street, Philadelphia, PA 19130.

24. Defendant Mayor of City of Philadelphia is in charge of all the City Defendants and its employees and is and was at all times relevant to the acts complained of relating to all the City Defendants in this suit, responsible for the policies, practice, regulations, and customs of all the City Defendants named in this complaint, and enforcing the law relating to the acts complained of by the City Defendants. Defendant Mayor of City of Philadelphia is located at City Hall, 1400 John F. Kennedy Blvd, Room 215, Philadelphia, PA 19107.

25. Defendant City Council of Philadelphia is governed by the President of the City Council members and is responsible for the policies, practice, regulations, and customs of Defendant Philadelphia Department of Human Services, and located at City Hall, 1400 John F. Kennedy Blvd, Room 313, Philadelphia, PA 19107.

**FACTS**

26. On May 11, 2021, Plaintiff, Crystal R. Canty [Ms. Canty], had a mental breakdown, i.e. an anxiety attack, and her minor son, Lashawn, called 911 and notified the police that something was wrong with his mother, she was crying.

27. When the police arrived at Plaintiff's home, she was asked did she want to go get treatment at the hospital, and after she said, yes, she was transported to Defendant Albert Einstein Medical Center Emergency Room by Fire Rescue.

28. While Plaintiff was in said Defendant's emergency room, she was seen by Defendant Einstein Emergency Room Physician Jane Doe.

29. When Plaintiff was interviewed by Defendant Physician Jane Doe, she was told that she did not need the kind of treatment that the emergency room provide, and that the kind of treatment she need in order for her to receive emergency treatment she would have to be admitted for involuntary psychiatric treatment under 302.

30. Plaintiff explained to Defendant Physician Jane Doe that she did not want to be admitted under 302 for involuntary psychiatric treatment, because it may interfere with her personal care home business of helping persons with mental illness.

31. Defendant Jane Doe then told Plaintiff that she did not want to let Plaintiff leave without being seen by a doctor for treatment, because it would be hard for her to find a doctor who would treat her without her having medical coverage, and that because Plaintiff don't have medical coverage she could be seen by a doctor for treatment if she admit herself under 201 for voluntary psychiatric treatment and she would only have to stay admitted for three (3) days to see a doctor and receive treatment.

32. Plaintiff agreed to a voluntary psychiatric admission to see a doctor and receive treatment, and when she seen a doctor the doctor asked her did she have any children and she responded yes, and asked the doctor could she make a phone call to check on her two (2) minor sons, the oldest being 15 years of age.

33. Rather than allow Plaintiff to call her sons and talk to them, the doctor told plaintiff that her adult son, Amir Canty, was contacted to inform him that she had been admitted to Einstein Medical Center (EMC) and that her two minor sons are home alone, so that he could take care of them until she came home, and therefore, her adult son went to her home and took her minor sons to his home.

34. Plaintiff did not ask the doctor to have someone call her son, Amir, and tell him she had been admitted to EMC and to ask him to go get her sons <u>and</u>

the doctor did not ask her if she wanted her son, Amir, to take care of her minor sons until she is discharged home.

35. Plaintiff and her son Amir did not have a good relationship, and had an active stay-away order between them at the time he was contacted by EMC concerning Plaintiff's minor sons being home alone because Plaintiff had been admitted to EMC.

36. As a result of Defendant EMC contacting Plaintiff's son, Amir Canty, and informing him of her being admitted to EMC and that her minor sons, Princeston and Lashawn, were home alone, Defendant EMC caused Plaintiff's son Amir to take her minor sons into his home, without her permission.

37. As a further result of Defendant EMC causing Plaintiff's son Amir to take her minor sons into his care and control, without Plaintiff's permission, her son Amir had took her minor son, princeston, to Princeston's school (i.e. Defendant Mann Mastery Elementary) on May 134, 2021, primary election day, and dropped him off in front of the school while the school was closed to the students.

38. Consequently, on May 13, 2021, according to Plaintiff's son, Princeston, rather than transport Princeston back to his adult brother Amir Canty's home "after" he told Defendant Janet Thompson that his brother had dropped him off in front ~~in front~~ of his school, i.e. Mann Mastery Elementary, because his mother, Plaintiff, was in the hospital, but the school was closed, Defendant Thompson transported Princeston to the Philadelphia Police, District 19 station house, and left him in the police custody.

39. However, on June 11, 2021, Defendant Philadelphia Department of Human Services filed a "Dependency Petition" against Plaintiff, concerning her two minor sons as indicated in paragraph 13 herein, alleging in pertinent and relevant part relating to the allegations in this suit: "The above-named juvenile is a dependent child under the provisions of the Pennsylvania Juvenile Act, 42 Pa.C.S. §§6301-6365. It is in the best interests of this child and for the public that this petition be filed with the court. Petitioner has made reasonable efforts to prevent placement of this minor child. Upon information provided by the social worker, this child is dependent and/or abused pursuant to the Juvenile Act (42 Pa.C.S. §6302 (Dependent Child)(1) and/or the Child Protective Service Law (23 Pa.C.S. §6303(b)(1)) **in that:** This is an urgent petition. On May 13, 2021, the Department of Human

Services (DHS) received a General Protective Service (GPS) report alleging that Princeton [Princeston] was taken to school by his adult sibling, Amir Canty, but the school was closed; that school staff members attempted to contact Princeston's emergency contacts and family members, but no contact was made; that Princeston was transported to the Philadelphia Police District 19 station house; that police officers attempted to contact Princeston's emergency contact, but no one was available; that the officers learned that Princeston's mother, Crystal Canty, had been admitted to Einstein Medical Center (EMC) in Philadelphia; and that Princeston was without a caregiver. **This report was determined to be valid. On May 13, 2021, the police transported Princeston to DHS. Princeston provided DHS with Mr. Canty's contact information, and DHS was able to contact Mr. Canty, who subsequently retrieved Princeston from DHS."**

40. Despite the above **"initial"** <u>alleged</u> **report failing to show a "valid reason", thus "probable cause"** for Defendant Philadelphia Department of Human Services to go to the home of Plaintiff's son, Amir Canty, to investigate child dependency and/or abuse, according to the "Dependency Petition", on the same day, i.e. May 13, 2021, that Plaintiff's adult son, Amir Canty, was allowed to retrieve Plaintiff's minor son, Princeston, from said Defendant, **the Defendant went to the home of Mr. Canty to investigate the above-said report,** which **"merely"** indicated in pertinent part: that Plaintiff's minor son, Princeston, "**was taken to school by his adult sibling, Amir Canty, but the school was closed; that police officers attempted to contact Princeston's emergency contact, but no one was available; that the officers learned that Princeston's mother, Crystal Canty, had been admitted to Einstein Medical Center (EMC) in Philadelphia; and that Princeston was without a caregiver**", contrary to the fact that Princeston was released from DHS to Amir Canty, Princeston's adult brother, as Princeston's caregiver, while Princeston's mother, Plaintiff, was admitted to EMC <u>and</u> contrary to the fact that **"Princeston was left at home in care of his teenage brother, Lashawn, who was 15 years of age"**, when Plaintiff was admitted to EMC as a result of her having a **"mental breakdown"** <u>and</u> **there is/was no allegation in the "initial report" of child abuse.**

41. Also, despite Plaintiff <u>**not**</u> **"orally" or "in writing" giving** Defendant Albert Einstein Medical Center or <u>**any**</u> of its employees permission to disclose to anyone why Plaintiff had been admitted to EMC, approximately six months

after Plaintiff had been admitted to EMC, Defendant Philadelphia Department of Human Services (DHS) had informed the Judge presiding at the hearing on the "**Dependency Petition**", that Plaintiff had been admitted to EMC for an "**involuntary psychiatric admission**" under 302.

42. Consequently, on record in open court, at the above-said Dependency Petition hearing, the Judge referred to Plaintiff's **mental health treatment** that ~~said~~ she received when she was admitted to EMC, thus, Defendant DHS and the Judge used Plaintiff's "**mental breakdown**" information on record against her, to justify why her sons had been removed from her home and to keep them in placement, without Plaintiff authorizing disclosure of her mental health records or information and without a court order to do same or a court order psychiatric or psychological examination.

43. Thus, as a result of Defendant Einstein Emergency Room Physician Jane Doe causing Plaintiff to be an "involuntary" psychiatric admission instead of a voluntary psychiatric admission as Plaintiff agreed to, and have Plaintiff seen and treated for her "anxiety attack" the same day by a doctor as an emergency admission, because Plaintiff had volunteered to be transported to EMC for emergency treatment, and was thus transported to EMC emergency room by Fire Rescue as indicated in paragraphs 26-27, said Defendant further caused Plaintiff to be "involuntarily" held for treatment for three (3) days and have her minor sons, Princeton and Lashawn, placed in the care, custody, and control of Plaintiff's adult son, Amir Canty, against her will.

44. As a result of Defendant Albert Einstein Medical Center not providing for "emergency" psychiatric treatment, i.e. emergency treatment for Plaintiff's anxiety attack without requiring her to be admitted involuntarily for psychiatric treatment because she did not have medical coverage, or Defendant Jane Doe requiring Plaintiff to be or requesting Plaintiff to be admitted for psychiatric treatment "involuntarily" under 302 because Plaintiff did not have medical coverage, said Defendants discriminated against Plaintiff.

45. Furthermore, Defendants Janet Thompson and Philadelphia Police Department caused Plaintiff's minor son Princeton, to be subjected to police custody and then Defendant Philadelphia Department of Human Services (DHS) custody, **without a "valid" report of Princeton being "dependent" or "abused"**, to warrant Princeton being placed in Defendant Philadelphia Police Department custody by Defendant Thompson and then placed in Defendant DHS custody by

Defendant Philadelphia Police and/or to warrant an investigation ~~by Defendant~~ by Defendant DHS into the "**initial report**" mentioned in the "**Dependency Petition**" filed against plaintiff on June 11, 2021, by Defendant DHS; that "merely" indicated that Princeton's adult brother, Amir Canty, was taking care of him and had mistakenly taken him to school and dropped him off while the school was closed, because their mother, Plaintiff, had been admitted to EMC; that Defendant Thompson "merely" transported Princeton to the police station and placed him in custody, control, and care of Defendant Philadelphia Police because an attempt to contact Princeton's emergency contact failed and that Defendant Philadelphia Police "merely" passed Princeton off to custody, control, and care of Defendant DHS because "police officers" attempt to contact Princeton's emergency contact failed.

46. Although Defendants Thompson and Defendant Philadelphia Police knew that Princeton's adult brother, Amir Canty, had custody, control, and care of him because his mother, Plaintiff, had been admitted to EMC, the Defendants did not attempt to contact Plaintiff to inform her that Princeton was left at the school by her adult son, Amir Canty, but the school was closed and they could not contact him, therefore, do she have someone else to care for him until Amir is contacted.

47. The actions of Defendants Thompson and Philadelphia Police described in paragraphs 45-46 constituted discrimination against Plaintiff and denied Plaintiff due process when they failed or refused to attempt to contact her because she had been admitted to EMC.

48. As a result of the actions of Defendants Thompson and Philadelphia Police described in paragraphs 45-46, they also caused Defendant DHS to discriminate against Plaintiff and deny her due process by investigating the "initial GPS report" described in paragraphs 39-40, without first giving her notice of the report and an opportunity to be heard before they investigated her children based on the initial report and thus involved itself in Plaintiff's "privacy" because she had been admitted to EMC as a result of a "**mental breakdown**", i.e. an anxiety attack.

49. As a result of Defendant DHS invading Plaintiff's privacy based on a "false report" (i.e. the initial report falsely indicating that Plaintiff's minor son, Princeton, was without a caregiver because Plaintiff had been admitted to EMC) and failing or refusing to afford her notice and an

opportunity to be heard concerning her minor son, Princeton, being left in front of his school while it was closed and concerning the allegation that Princeton was without a caregiver, said Defendant caused the "Dependency Petition" to be filed against Plaintiff, in violation of her right to privacy and due process when she was not afforded an administrative hearing on the initial report, and thus caused her to be discriminated against and denied her parental rights for 17 months based on her having a "mental breakdown" when said Defendant informed the court at the time of a hearing on said Petition, that Plaintiff was admitted to EMC for an involuntary psychiatric admission under 302, without her first giving written consent for her mental health information, record to be disclosed, in violation of 50 Pa.Stat.Ann. §7111, of the Mental Health Procedures Act (MHPA); 2 Pa.C.S. §504, the Administrative Agency Law; Pennsylvania Child Protective Law, 23 Pa.Cons.Stat.Ann §6301 et seq; Juvenile Court Act, 42 Pa.Cons.Stat.Ann. §6301 et seq.; United States Constitution 1st, 4th, 8th, 13th, and 14th Amendments; 42 U.S.C. §§12131 and 12132, and 29 U.S.C. 794(a) and (d). Defendants Jonathan Houlan, Lanertia Foster, Mackenzie Barnes, and Catholic Community services was responsible for the acts of Defendant DHS.

50. All of the Defendants caused Plaintiff to be punished, discriminated against, and thus denied due process and equal protection of the law, in violation of her rights under the 4th and 14th Amendments to the United States Constitution as a result of their actions described herein, while acting under the color of State and Federal law.

51. Defendants City of Philadelphia, Philadelphia Police Department, Philadelphia Department of Human Services, Jonathan Houlan, Kimberly Ali, Lanertia Foster, Mackenzie Barnes, The School District of Philadelphia, Janet Thompson, Mann Mastery Elementary School, Catholic Community Services, President of Board of Education, President of Board of Trustees, Mayor of City of Philadelphia, and City Council of Philadelphia caused Plaintiff to be subjected to loss of association, loss of consortium, loss of parental rights, loss of privacy with her two minor sons, Lashawn V. Bradwell Canty, and Princeton L. Canty Kent, for a period of 17 months, and thus caused Plaintiff to be subjected to denial of due process and equal protection by failing to enforce Plaintiff's rights described in the above paragraph and/or adequately train and supervise the Defendants responsible for the conduct complained of in this suit and/or for failing to make and enforce policy to protect Plaintiff from the acts complained of, while they had a duty to do so, as indicated in paragraphs 9-25, while acting under the color of state and

federal law.

52. The Defendants' actions described herein caused Plaintiff to suffer great mental anguish, distress, bad reputation, defamation of character, cruel and unusual punishment, loss of sleep, loss of appetite, discrimination, loss of association, loss of consortium, loss of parental rights, loss of freedom of choice, loss of privacy, and thuis could have caused Plaintiff to commit suicide, based on her having a mental breakdown, in violation of her constitutional and federal rights described in paragraph 49.

## RELIEF

53. A declaratory judgment declaring the acts of the Defendants unconstitutional.

54. An injunction prohibiting the Defendants from retaliating against Plaintiff for filing this suit and requiring that all records relating to the Dependency Petition be expunged.

55. Compensatory damages in the total amount of $20,000,000 (twenty million dollars) collectively from those Defendants held liable, in their individual capacities.

56. Trial by Jury on all issues triable by jury.

57. Pendent jurisdiction invoked.

58. Costs to be paid by Defendants.

59. Such other relief deemed just, equitable, and proper.

I, declare under penalty of perjury that the foregoing is true and correct.

Date: October 5, 2023

S/ C. Canty

CRYSTAL R. CANTY
Pro Se Plaintiff